IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

U.S. COURT OF APPEALS
FILED
OCT 16 2000
CHARLES R. FULBRUGE III
CLERK

———————————

No. 00-20159

———————————

DENNIS THURL DOWTHITT

Petitioner - Appellant

v.

GARY L. JOHNSON, DIRECTOR,
TEXAS DEPARTMENT OF CRIMINAL JUSTICE,
INSTITUTIONAL DIVISION

UNITED STATES COURTS
SOUTHERN DISTRICT OF TEXAS
FILED
OCT 18 2000
MICHAEL N. MILBY, CLERK OF COURT

Respondent - Appellee

CA-98-3282

Appeal from the United States District Court
for the Southern District of Texas

Before KING, Chief Judge, and HIGGINBOTHAM and STEWART, Circuit
Judges.

KING, Chief Judge:

Texas death row inmate Dennis Thurl Dowthitt appeals from
the district court's denial of habeas corpus relief. In order to
obtain review of his claims, Dowthitt seeks a certificate of
appealability (COA) from this court, pursuant to 28 U.S.C.
§ 2253(c)(2). We deny Dowthitt's request for a COA.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

At Dowthitt's trial, the State presented evidence that Dowthitt and his son, Delton Dowthitt ("Delton"), age 16, picked up Gracie and Tiffany Purnhagen, ages 16 and 9, respectively, on June 13, 1990 in a bowling alley parking lot.  According to Delton's testimony at Dowthitt's trial, Dowthitt sexually assaulted Gracie with a beer bottle and cut her throat with a knife.[1]  Meanwhile, Delton strangled Tiffany with a rope.[2]

Following a jury trial, Dowthitt was convicted of the murder of Gracie Purnhagen committed in the course of aggravated sexual assault.  On October 9, 1992, based on the jury's answers, Dowthitt was sentenced to death for capital murder.  The Texas Court of Criminal Appeals affirmed his conviction and sentence on June 26, 1996.  See Dowthitt v. State, 931 S.W.2d 244 (Tex. Crim. App. 1996).

On August 18, 1997, Dowthitt filed a state petition for habeas relief.  The state district court, on March 6, 1998,

---

[1]   The evidence indicated that Dowthitt cut Gracie's throat once before and once after the sexual assault.  Gracie was still alive during the assault.

[2]   Delton pled guilty to the murder of Tiffany Purnhagen. Pursuant to a plea agreement, he was sentenced to 45 years and testified against his father at trial.  In addition, the second murder charge for Gracie's death was dropped.

2

entered findings of fact and conclusions of law and recommended that habeas relief be denied. The Court of Criminal Appeals, adopting most of the findings and conclusions, denied Dowthitt habeas relief. See Ex Parte Dowthitt, No. 37,557 (Tex. Crim. App. Sept. 16, 1998). On April 19, 1999, the United States Supreme Court denied Dowthitt's petition for a writ of certiorari. See Dowthitt v. Texas, 119 S. Ct. 1466 (1999).

After obtaining appointment of counsel and a stay of execution, Dowthitt filed his petition for habeas corpus relief in federal district court on December 30, 1998. In response to Dowthitt's amended petition on February 12, 1999, the State moved for summary judgment. The district court, on January 7, 2000, held an evidentiary hearing on Dowthitt's actual innocence claim. On January 27, 2000, the district court filed a detailed and careful Memorandum and Order and entered a final judgment, denying Dowthitt habeas relief on all claims, dismissing his case with prejudice, and denying Dowthitt's request for a COA. After the district court denied his Rule 59(e) motion, Dowthitt timely appealed to this court, requesting a COA and reversal of the district court's judgment denying habeas relief.

## II.  DISCUSSION

3

Because Dowthitt's petition for federal habeas relief was filed after April 24, 1997, this appeal is governed by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 100 Stat. 1214.  See Molo v. Johnson, 207 F.3d 773, 775 (5th Cir. 2000) ("Petitioners whose convictions became final before the effective date of the AEDPA were given a grace period of one year to file their federal habeas petitions, rendering them timely if filed by April 24, 1997.").  Under AEDPA, a petitioner must first obtain a COA in order for an appellate court to review a district court's denial of habeas relief.  See 28 U.S.C. § 2253(c)(1)(A).

28 U.S.C. § 2253(c)(2) mandates that a COA will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right."  This standard "includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  Slack v. McDaniel, 120 S. Ct. 1595, 1603-04 (2000) (internal quotations and citations omitted); see also Hill v. Johnson, 210 F.3d 481, 484 (5th Cir. 2000).

The formulation of the COA test is dependent upon whether the district court dismisses the petitioner's claim on constitutional or procedural grounds.  If the district court

rejects the constitutional claims on the merits, the petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." <u>Slack</u>, 120 S. Ct. at 1604.  On the other hand,

> [w]hen the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of a denial of a constitutional right <u>and</u> that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

<u>Id.</u> (emphasis added); <u>see also Hernandez v. Johnson</u>, 213 F.3d 243, 248 (5th Cir. 2000).

Furthermore, "the determination of whether a COA should issue must be made by viewing the petitioner's arguments through the lens of the deferential scheme laid out in 28 U.S.C. § 2254(d)." <u>Barrientes v. Johnson</u>, 221 F.3d 741, 772 (5th Cir. 2000).  We give deference to a state court decision for "any claim that was adjudicated on the merits in State court proceedings" unless the decision was either "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or the decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2).

The "contrary to" requirement "refers to the holdings, as
opposed to the dicta, of . . . [the Supreme Court's] decisions as
of the time of the relevant state-court decision."  (Terry)
Williams v. Taylor, 120 S. Ct. 1495, 1523 (2000).  The inquiry
into whether the decision was based on an "unreasonable
determination of the facts" constrains a federal court in its
habeas review due to the deference it must accord the state
court.  See id.

> Under the "contrary to" clause, a federal habeas court
> may grant the writ if the state court arrives at a
> conclusion opposite to that reached by . . . [the
> Supreme Court] on a question of law or if the state
> court decides a case differently than . . . [the
> Supreme Court] has on a set of materially
> indistinguishable facts.  Under the "unreasonable
> application" clause, a federal habeas court may grant
> the writ if the state court identifies the correct
> governing legal principle from . . . [the Supreme
> Court's] decisions but unreasonably applies that
> principle to the facts of the prisoner's case.

Id.

Section 2254(d)(2) speaks to factual determinations made by
the state courts.  See 28 U.S.C. § 2254(e)(1).  While we presume
such determinations to be correct, the petitioner can rebut this
presumption by clear and convincing evidence.  See id.  Absent an
unreasonable determination in light of the record, we will give
deference to the state court's fact findings.  See id.
§ 2254(d)(2).

Dowthitt seeks a COA from this court on the following issues[3]: (1) actual innocence, (2) ineffective assistance of counsel, (3) admission of DNA evidence without a factual predicate, (4) State misconduct, (5) failure to instruct the jury on lesser-included offenses, and (6) the district court's limited evidentiary hearing.

## A.  Actual Innocence

"Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." Herrera v. Collins, 506 U.S. 390, 400 (1993).[4]  Rather, a claim of actual innocence is "a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered

---

[3]    Dowthitt states in his opening brief that he does not appeal all of the issues decided by the district court; he also states that he does not appeal all of the sub-issues within the issues he does appeal.  As such, he preserves only the briefed issues for this appeal.  See 28 U.S.C. § 2253(c)(3) ("certificate of appealability . . . shall indicate which specific issue or issues" are the basis for relief); see also Trevino v. Johnson, 168 F.3d 173, 181 n.3 (5th Cir. 1999) (stating that issues not briefed on appeal are deemed waived).

[4]    "This rule is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution — not to correct errors of fact." Id.

7

on the merits." Id. at 404. In order for Dowthitt to obtain relief on this claim, "the evidence must establish substantial doubt about his guilt to justify the conclusion that his execution would be a miscarriage of justice unless his conviction was the product of a fair trial." Schlup v. Delo, 513 U.S. 298, 316 (1995) (emphasis added).

The Herrera Court did assume, arguendo, "that in a capital case a truly persuasive demonstration of 'actual innocence' made after trial would . . . warrant habeas relief if there were no state avenue open to process such a claim." 506 U.S. at 417. However, this circuit has rejected this theory. See Graham v. Johnson, 168 F.3d 762, 788 (5th Cir. 1999), cert. denied, 120 S. Ct. 1830 (2000).

Thus, Dowthitt must first raise substantial doubt about his guilt, which would then cause us to examine any barred constitutional claims.[5] Dowthitt's main argument in support of his innocence is that his son Delton confessed to killing Gracie.[6] Dowthitt bases this claim on the following: a signed

---

[5]   See section II.C, infra, which discusses a procedurally barred claim.

[6]   In his reply brief, Dowthitt also simply lists other arguments in support of his actual innocence claim, such as Delton's prior violent conduct and the lack of physical evidence. However, because he did not address these sub-issues in his opening brief, we will not consider them. See Pyles v. Johnson, 136 F.3d 986, 996 n.9 (5th Cir. 1998) ("An appellant abandons all

declaration by his nephew Billy Sherman Dowthitt that Delton told him that "Delton killed his girlfriend"; an unsigned affidavit of David Tipps, a former prison inmate in Delton's prison block, stating that Delton claimed to have killed both girls; a signed affidavit by Joseph Ward, a defense investigator, who states he drew up the affidavit that Tipps later refused to sign out of fear for himself; a signed affidavit of James Dowthitt, Dowthitt's brother, that his son Billy told him that Delton said he had killed both girls; and Dowthitt's own written proffer of innocence.

Not finding it necessary to conduct an evidentiary hearing, the state habeas court rendered its decision based upon the record. The court found that Delton "did not recant his trial testimony" that Dowthitt killed Gracie and that Billy "never stated that Delton . . . said he killed both girls."

The federal district court did, however, hold an evidentiary hearing on Dowthitt's actual innocence claim. Delton again testified in this evidentiary hearing that his father killed Gracie and that he never told Billy otherwise. The court held Dowthitt's other proffered statements inadmissible hearsay and

---

issues not raised and argued in his initial brief on appeal." (internal quotations and citation omitted)); see also Trevino v. Johnson, 168 F.3d 173, 181 n.3 (5th Cir. 1999) (stating that inadequately argued issues are considered waived).

found that even if Billy's statement were to be considered, they failed to provide any convincing account of the events. Determining, in addition, that the state findings were not unreasonable, the district court held that Dowthitt's claim of actual innocence fell far short of the threshold set by the Supreme Court in Herrera.

We conclude that Dowthitt has not raised "substantial doubt" as to his guilt.  Dowthitt's newly discovered evidence consists solely of affidavits, and these affidavits are "particularly suspect . . . because they consist of hearsay." Herrera, 506 U.S. at 417.  What Delton allegedly told others is hearsay and does not fall under any exception to the hearsay rule. Cf. FED. R. EVID. 804(b)(3) (statement against interest exception requires that the declarant be unavailable, and in this case, Delton, far from being unavailable, testified at trial and at the district court's evidentiary hearing).  Not only do Dowthitt's proffers consist of hearsay (some with multiple levels), one is also unsigned.  As such, this evidence is not nearly strong enough to raise a substantial doubt about Dowthitt's guilt.  Cf. Schlup, 513 U.S. at 331 (finding that the "sworn testimony of several eyewitnesses that . . . [the petitioner] was not involved in the crime" raised a sufficient issue that required an evidentiary hearing).

10

In addition, even if we were to consider Billy's hearsay affidavit, we agree with the State that it does not possess sufficient "indicia of reliability" due to its inconsistency with the physical evidence.  The physical evidence established that Gracie (who was considered Delton's girlfriend) died from knife wounds to her throat after being sexually assaulted, while her younger sister Tiffany was strangled.  Billy, however, states that Delton said he strangled his girlfriend, while Dowthitt sexually assaulted and stabbed the "little girl."  As this does not comport with the physical evidence, Billy's statements do not provide us with a convincing account of the events.

Furthermore, what Dowthitt puts forth is actually not "newly discovered" evidence.  He presented the substance of the affidavits at his trial.  In particular, as the state habeas court found, "Delton's first confession, in which he stated that he killed both girls, was admitted in evidence."  Delton was cross-examined as to his plea agreement and his prior inconsistent confession.[7]  Thus, the jury had the opportunity to take into account both versions of the murders and determine which was more credible.  The jury, with the ability to listen to

_____

[7]    During the State's rehabilitation of Delton's testimony, Delton's attorney testified as to a prior consistent statement: that, prior to the plea agreement, Delton had told him that his father killed Gracie.  The state court, on direct appeal, found that the admission of the attorney's testimony was not erroneous.

live testimony, was in a better position to judge the credibility of the witnesses and the accounts of the events; absent a lack of support in the record, we will not second guess their determination.  See United States v. Ramos-Garcia, 184 F.3d 463, 466 (5th Cir. 1999) (stating that the jury evidently did not believe the alternative explanation of the events and that the court would "'not second guess the jury in its choice'"); United States v. Kaufman, 858 F.2d 994, 1004 (5th Cir. 1988) (finding that it was a "serious mistake . . . to second-guess judgments that . . . [were made] firsthand").

We find that Dowthitt's proffered evidence establishing his actual innocence fails to raise a substantial doubt as to his guilt.


B.  Ineffective Assistance of Counsel

Dowthitt must make a substantial showing of a denial of his Sixth Amendment right to counsel to obtain a COA.  His ineffective assistance of counsel claim meets the threshold question under AEDPA, § 2254(d)(1), that the rule of law be clearly established at the time of the state court conviction in 1992.  This is so because the merits of an ineffective assistance of counsel claim are governed by the well-established rule of Strickland v. Washington, 466 U.S. 668 (1984).  Dowthitt must

establish both prongs of the <u>Strickland</u> test in order to prevail.
First, he "must show that counsel's performance was deficient."
<u>Id.</u> at 687. Second, he "must show that the deficient performance
prejudiced . . . [his] defense." <u>Id.</u>

Deficient performance is established by showing "that
counsel's representation fell below an objective standard of
reasonableness." <u>Id.</u> at 688; <u>Hernandez v. Johnson</u>, 213 F.3d 243,
249 (5th Cir. 2000). Moreover, as the Supreme Court has
counseled, a "fair assessment of attorney performance requires
that every effort be made to eliminate the distorting effects of
hindsight . . . and to evaluate the conduct from counsel's
perspective at the time." <u>Strickland</u>, 466 U.S. at 689. Thus,
our scrutiny of counsel's performance is highly deferential. <u>See</u>
<u>id.</u> We must be particularly wary of "argument[s] [that]
essentially come[] down to a matter of degrees. Did counsel
investigate enough? Did counsel present enough mitigating
evidence? Those questions are even less susceptible to judicial
second-guessing." <u>Kitchens v. Johnson</u>, 190 F.3d 698, 703 (5th
Cir. 1999).

Prejudice ensues when "there is a reasonable probability
that, but for the counsel's unprofessional errors, the result of
the proceedings would have been different." <u>Clark v. Johnson</u>,

13

--- F.3d ----, 2000 WL 1285270, *7 (5th Cir. 2000) (internal quotations omitted) (quoting Strickland, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

In his ineffective assistance of counsel claim, Dowthitt raises several sub-issues concerning his mitigation defense, investigation, and closing arguments. We will examine each of his claims in turn.

### 1. Failure to Present a Mitigation Defense Based on Mental Illness

Dowthitt argues that trial counsel failed to present a mitigation defense based on mental illness. In support of this argument, Dowthitt points to several aspects of his life and trial. He states that his habeas counsel located records indicating he suffered from mental illness that were not discovered by trial counsel. A 1964 re-admission form from Austin State Hospital shows that a young Dowthitt was diagnosed as having a "schizophrenic reaction" of a "chronic paranoid type" and was committed temporarily. The admission history also states that when Dowthitt was hospitalized due to an automobile accident in August 1962, a test "showed slight brain damage." In addition, Dowthitt points to Sergeant Walter Blakeslee's statement of July 14, 1964 recommending that Dowthitt be

14

discharged from the Air Force.  Blakeslee stated "it was evident
to . . . [him] that Airman Dowthitt was suffering from some
mental deficiency."

Dowthitt also relies heavily on declarations from Dr. Paula
Lundberg-Love and Dr. Faye E. Sultan, mental health experts hired
by habeas counsel.  Lundberg-Love stated that her "clinical
impression was that . . . [Dowthitt] was not sadistic or
sociopathic."  She further wrote that Dowthitt's "profile was
consistent with paranoid and schizophrenic features" and that he
suffers from depression.  Sultan stated in her affidavit that the
interrogation videotapes showed Dowthitt's "severe mental
problems" and that the trial mental health expert's "examination
was cursory."  She also wrote that Dowthitt "functions quite
peacefully and successfully within the prison environment,"
rebutting the predictions made at trial about his potential for
future dangerousness.

Dowthitt argues that trial counsel's affidavits provide
further support for their deficient performance with regard to
his mitigation defense.  He states that, by their own words,
trial counsel did not investigate mental health defenses because
they "had no knowledge that Defendant suffered brain damage," and
"he appeared sane and competent at all times."  Dowthitt further
quotes trial counsel's affidavit: "During our many interviews

15

Defendant never appeared to be suffering from any mental problems other than being upset and unhappy about his circumstances." Dowthitt asserts that such impressions on the part of trial counsel were not reasonable because he was on anti-depressants during that time, because his video-taped interrogation exposes his unstable state of mind, and because the Lundberg-Love and Sultan declarations confirm his mental illness.

Citing to <u>Goss v. State</u>, the State responds that Texas caselaw has discounted mitigation evidence not relevant to the crime or future dangerousness. 826 S.W.2d 162, 165 (Tex. Crim. App. 1992), <u>cert. denied</u>, 509 U.S. 922 (1993). The State further argues that, even in the face of Dowthitt's repeated denials of any mental problems, trial counsel retained a psychiatrist to examine Dowthitt. The State also points out that Dowthitt received funds for neuropsychological expert assistance during the state habeas corpus proceedings, but that no evidence from that expert's testing has ever been presented.

As for the reports of Lundberg-Love and Sultan, the State asserts that they are precluded from consideration because they were not presented to the state courts. Further, the State claims that Dowthitt has not established cause and prejudice for his failure to develop this evidence below. Finally, citing to the district court's findings, the State argues that even if the

reports were considered, they are insufficient because Lundberg-Love and Sultan appeared to have formed their impressions from speaking with Dowthitt's habeas counsel.

In reply, Dowthitt argues that under the Supreme Court's decision in (Terry) Williams v. Taylor, the "nexus" requirement for mitigation evidence is erroneous. He further states that although the State continuously refers to "brain damage," he is contesting trial counsel's failure with regard to "mental illness." And, Dowthitt asserts that the Lundberg-Love and Sultan reports are not barred from consideration because he has established "cause" via the denial of funding to obtain experts by the state habeas courts.

As for Dowthitt's brain damage claim, the state habeas court found that Dowthitt was competent to stand trial, that no neuropsychological expert had found that Dowthitt suffered from brain damage, and that Dowthitt exhibited no signs of brain damage. These findings[8] are not unreasonable in light of the record, and Dowthitt has not presented clear and convincing evidence rebutting their presumption of correctness. Moreover, Dowthitt concedes these findings in his reply brief by abandoning his initial reliance, in part, on brain damage. He states that

---

[8]  The state habeas court also found trial counsel's affidavits, explaining that Dowthitt did not appear to be suffering from mental problems, to be credible.

17

"mental illness . . . is the mitigation evidence upon which . . . [he] bases his ineffectiveness claims."

As for the evidence indicating "mental illness" (the Austin State Hospital and the Air Force records), we are bound by the state habeas court's findings that these records included "information which could have hurt . . . [Dowthitt's] case."[9] Such information included, among other data, the following: that Dowthitt attempted to rape his eight-year old niece, that he had allegedly molested the same girl when she was five, that he had an immature personality (as opposed to psychotic tendencies), and that he "showed a temper and insisted on having his own way." In light of these details, the state habeas court's findings are clearly supported by the record. See 28 U.S.C. § 2254(d)(2).

Thus, even assuming arguendo that trial counsel were deficient in failing to discover these medical records,[10] Dowthitt was not prejudiced in his defense. See Buxton v.

_____

[9]   The state habeas court also found that Dowthitt was not medicated during trial with any anti-depressant or other mind-altering medication.

[10]   We note that Dowthitt steadfastly denied to his trial counsel that he had any mental problems. See Strickland, 466 U.S. at 691 ("The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions."). Still, trial counsel did retain a psychiatrist, Dr. Fred Fason, to examine Dowthitt; the Sixth Amendment does not require counsel to continue searching until they find an expert willing to provide more beneficial testimony on their behalf.

18

Lynaugh, 879 F.2d 140, 142 (5th Cir. 1989) ("Strickland allows the habeas court to look at either prong first; if either one is found dispositive, it is not necessary to address the other."). There is no "reasonable probability" that the outcome would have been different because the evidence was double edged in nature. As such, trial counsel's actions in not discovering and presenting the records to the jury to bring out indications of mental illness do not create a "probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

The state habeas court did not make additional findings dealing with Dowthitt's asserted mental illness because Dowthitt did not present any other evidence to that court. The Lundberg-Love and Sultan affidavits were introduced for the first time to the district court on federal habeas review. Thus, we must initially answer the threshold question of whether we are precluded from considering these affidavits. Although both the State and Dowthitt argue this issue as one of "factual

19

development" under § 2254(d) and (e),[11] it is more accurately analyzed under the "exhaustion" rubric of § 2254(b).[12]

"We have held that a habeas petitioner fails to exhaust state remedies when he presents <u>material</u> additional evidentiary support to the federal court that was not presented to the state court." <u>Graham v. Johnson</u>, 94 F.3d 958, 968 (5th Cir. 1996) (emphasis added); <u>see also</u> <u>Young v. Lynaugh</u>, 821 F.2d 1133, 1139 (5th Cir. 1987), <u>abrogation on other grounds recognized by</u> <u>Hendrix v. Lynaugh</u>, 888 F.2d 336 (5th Cir. 1989); <u>Brown v.</u> <u>Estelle</u>, 701 F.2d 494, 495-96 (5th Cir. 1983). Furthermore, "we are unwilling to . . . accommodate <u>new</u> factual allegations in support of a previously asserted legal theory, even though these factual allegations came into existence after the state habeas relief had been denied." <u>Joyner v. King</u>, 786 F.2d 1317, 1320 (5th Cir. 1986) (emphasis added).

Thus, we must first determine whether this claim is before us "in a significantly different and stronger evidentiary posture than it was before the state courts." <u>Joyner</u>, 786 F.2d at 1320.

---

[11]   Section 2254(e) deals with when a petitioner is entitled to an evidentiary hearing in federal district court even though he has failed to develop the factual bases of his claims in state habeas proceedings.

[12]   Section 2254(b)(1)(A) states, in part, that "a writ of habeas corpus . . . shall not be granted unless it appears that the Applicant has exhausted the remedies available in the courts of the State."

We find that Dowthitt does not allege "new facts" via the affidavits of the two experts because "all crucial factual allegations were before the state courts at the time they ruled on the merits" of Dowthitt's habeas petition.  See Young, 821 F.2d at 1139; cf. Graham, 94 F.3d at 969 (finding no exhaustion in the case because petitioner did present significant new facts in his federal petition).  Dowthitt had presented to the state habeas court his assertions of mental illness of the schizophrenic, paranoid type.  The Lundberg-Love and Sultan affidavits add little to those claims.

While we find that consideration of these affidavits is not precluded, we do not find them to demonstrate a substantial showing of the denial of the Sixth Amendment right to counsel. Even if trial counsel had obtained this information, Dowthitt fails to demonstrate that such information would have altered the jury's judgment.  Sultan's affidavit is based on her review of a portion of the paper record, and she did not personally interview Dowthitt.  We also agree with the district court's assessment that "much of Dr. Sultan's initial declaration is based on her discussions with habeas counsel rather than on independent

21

analysis" because her statements put forth information that she
could not have known otherwise.[13]

Lundberg-Love's affidavit also presents similar problems.
She stated that she could have testified to Dowthitt's mental
trauma "that he was experiencing as a result of witnessing Delton
sexually assault Gracie after he had cut her throat and kill her
sister prior to . . . [Dowthitt's] arrival back at the murder
scene."[14]  As the jury had decided not to believe Dowthitt's
claims, this version of the murders would not be credited during
sentencing.  Therefore, even assuming _arguendo_ that trial
counsel's performance was deficient,[15] Dowthitt fails to make a

---

[13]  For example, Sultan states that Dowthitt "spent much of
the interrogation hooked up to a polygraph machine, looking
terrified and confused."  However, she does not list the
interrogation videotapes among the materials that she reviewed.

[14]  Lundberg-Love also noted that she would have testified
regarding the consequences of his mental illness.

[15]  We pause briefly to address the parties' arguments
regarding the "nexus" requirement for a mitigation defense.  So
far as the State is asserting that mitigating evidence "not
connected to the crime or future dangerousness" cannot be
considered, it is not consistent with the Supreme Court's most
recent statement on this issue:  "Mitigating evidence unrelated
to dangerousness may alter the jury's selection of penalty, even
if it does not undermine or rebut the prosecution's death-
eligibility case."  (Terry) Williams v. Taylor, 120 S. Ct. 1495,
1516 (2000).  While the jury can take into account the "totality
of available mitigation evidence," _id._ at 1515, "a tactical
decision not to present character evidence during the penalty
phase of a capital murder trial because it would open the door
for incidents of prior misconduct . . . [is] not unsound."
Barrientes, 221 F.3d at 774.

substantial showing of prejudice on this <u>Strickland</u> claim as he does not demonstrate a sufficient probability that the alleged errors of trial counsel undermined confidence in the outcome. <u>See, e.g.,</u> <u>Boyd v. Johnson</u>, 167 F.3d 907, 910 (5th Cir.), <u>cert. denied</u>, 527 U.S. 1055 (1999) ("The potential negative impact of the retardation evidence, in addition to the cold-blooded nature of the murder and . . . [defendant's] other violent conduct, persuades us that the outcome of the sentencing would not have been different if counsel would have investigated further.").

### 2. *Failure to Competently Prepare and Use Dr. Fason*

Dowthitt next asserts constitutional error with regard to trial counsel's inadequate development of Dr. Fred Fason's testimony. Counsel retained Dr. Fason, a psychiatrist, to examine Dowthitt on several issues regarding Dowthitt's mental state. Dowthitt argues that trial counsel did not competently prepare Dr. Fason and did not call Dr. Fason as a witness during trial.

The state habeas court noted the integrity of trial counsel and found their affidavits to be credible. In their affidavits, trial counsel stated that Dr. Fason had a "lengthy interview" with Dowthitt and "spent many hours reviewing various tapes and discussing this case" with counsel. Dowthitt, in turn, points to Dr. Fason's May 13, 1992 notes and states that they "indicate a

23

very short jailhouse interview." He further asserts that he "remembers" the interview being "exceedingly short." Dowthitt does not explain how the notes "indicate" the length of the interview. Dowthitt's personal beliefs, although they may be genuine, do not present clear and convincing evidence that would rebut the state court's findings.[16]

Dowthitt also asserts that trial counsel did not request Dr. Fason to conduct an evaluation for mitigation purposes. The State responds, however, that a letter in trial counsel's files reveals that just such an evaluation was requested. Dowthitt has failed to raise a substantial issue that trial counsel was not reasonable in pursuing a mitigation defense.

In addition, Dowthitt contests trial counsel's decision not to call Dr. Fason to testify on Dowthitt's behalf at trial. He claims that Dr. Fason's report would have demonstrated that he was not dangerous. This assertion fails to meet the deficient performance prong of Strickland. Although Dr. Fason's report contains some information relating to mitigating factors, statements detrimental to Dowthitt are also included that clearly

---

[16] Dowthitt also refers to jailhouse records that would indicate the time spent in the particular interview. He contends that the State has not released them. However, he does not develop this argument further and, as such, has not adequately briefed this issue for our consideration. See Trevino v. Johnson, 168 F.3d 173, 181 n.3 (5th Cir. 1999) (stating that inadequately argued issues are considered waived).

indicate his unwillingness to testify in Dowthitt's favor.  Thus,
trial counsel's decision not to put a witness on the stand who
himself is not entirely favorable toward Dowthitt, and
furthermore, who would have to respond with more damaging
information during the State's cross-examination, is not
objectively unreasonable.[17]  Trial counsel also elicited
favorable information during cross-examination of the State's
expert witness, Dr. Walter Quijano.[18]  This further supports the
conclusion that the trial counsel's decision not to put Dr. Fason
on the stand was a matter of trial strategy.  See Strickland, 466
U.S. at 699.

Dowthitt also argues that trial counsel should have found
another expert who would be willing to testify to Dowthitt's lack
of future dangerousness based on his mental condition.  As the

_____

[17]  In addition, trial counsel's affidavit, found credible
by the state habeas court, states that Dr. Fason reported to them
personally that he believed that Dowthitt was a very dangerous
individual.

[18]  Dowthitt vehemently contests the beneficial impact of
Quijano's testimony on cross-examination.  However, given the
damage that could have been caused by Dr. Fason's testimony and
that some of Dr. Quijano's statements could have been considered
in Dowthitt's favor by the jury, trial counsel's decision was the
result of strategic considerations, one which will not be second-
guessed on federal habeas appeal.
In addition, Dowthitt notes that another capital case has
recently been reversed due to Dr. Quijano's improper testimony.
However, that does not automatically mandate a finding of error
in this case.

district court noted, even in the face of Dowthitt's steadfast denial of any mental problems, trial counsel, "in an abundance of caution," retained a psychiatrist.  Thus, the state habeas court finding that trial counsel were "relentless" in their pursuit of Dowthitt's defense is not unreasonable.  We also find that "[t]rial counsel performed appropriately, recognizing the possible issues regarding . . . [the defendant's] mental capacity, recognizing the need for expert assistance in exploring these issues," and employing a defense expert.  White v. Johnson, 153 F.3d 197, 207 (5th Cir. 1998) (emphasis added).  Under the circumstances, trial counsel was not deficient by not canvassing the field to find a more favorable defense expert.

Dowthitt has failed to make a substantial showing on this ineffective assistance counsel claim.  We find that reasonable jurists would not debate the propriety of granting a COA on this issue.

### 3. Failure to Present Dowthitt's Mercy-Evoking Background as Mitigation Through Family Members

Dowthitt claims that trial counsel committed constitutional error by not presenting mitigation evidence via family members during the punishment phase of the trial.  He argues that the following family members' affidavits demonstrate that they would have testified to Dowthitt's abusive upbringing, his mental

26

difficulties, and his loving relationship with some of his children: Darlene Glover, Dowthitt's sister; Stacey Dowthitt, Dowthitt's step-son; and Danna Taft, Dowthitt's wife.

As an initial matter, the State argues that consideration of these affidavits is barred on federal habeas appeal because they were not presented to state courts. The State bases this argument on § 2254(d) and (e). As we explained in section II.B.1, this issue is more appropriately analyzed under the § 2254(b) exhaustion framework. Thus, if the case is in a significantly stronger evidentiary framework before the federal habeas court than it was before the state habeas court, the exhaustion requirement has not been satisfied. See section II.B.1, supra. Dowthitt replies that the substance of these affidavits was presented to the state courts through the affidavits of the state habeas investigator detailing his interviews with these family members. We agree with Dowthitt that no "new facts" are presented to us and that the state habeas court had the critical facts before it. See Young, 821 F.2d at 1139. Thus, the exhaustion requirement of § 2254(b) has been satisfied.[19]

---

[19] We note that the state habeas court found that Dowthitt failed to obtain affidavits of his family members and did not show that they could not be obtained without court order. We agree with the district court's assessment that Dowthitt was not justified in not presenting those affidavits to the state habeas

27

The state habeas court found that Dowthitt "did not want any
of his family testifying on his behalf." Counsel will not be
deemed ineffective for following their client's wishes, so long
as the client made an informed decision. See Autry v. McKaskle,
727 F.2d 358, 361 (5th Cir. 1984) ("By no measure can . . . [the
defendant] block his lawyer's efforts and later claim the
resulting performance was constitutionally deficient.").
Dowthitt contests the state habeas court's finding by arguing
that he did not understand the import of mitigating evidence (and
trial counsel did not even discuss it with him). We agree with
the district court that Dowthitt's personal belief (in a proffer
submitted at the January 7, 2000 hearing) does not present clear
and convincing evidence to rebut the state court's finding.[20]

In addition, trial counsel, in an affidavit found to be
credible by the state habeas court, stated that they "attempted
to talk to anyone" who would cooperate[21] and that many potential
witnesses did not want to become involved. Thus, trial counsel

---

court. However, this impacts the need for a federal evidentiary
hearing under § 2254(e) and is not relevant to the exhaustion
determination under § 2254(b). See, infra, section II.F.

[20]   We also note that in their affidavit, found credible by
the state habeas court, trial counsel stated they "discussed the
case in detail" with Dowthitt.

[21]   The state habeas court found that they did speak with
Stacey Dowthitt.

28

attempted to delve into Dowthitt's background, but were hindered by external forces.  Unlike trial counsel in (Terry) Williams v. Taylor, 120 S. Ct. 1495 (2000), counsel's actions here would be characterized as reasonable trial strategy because they attempted to investigate Dowthitt's background and were thwarted by uncooperative potential witnesses.

Trial counsel further stated in their affidavit that some people who did speak with them had knowledge of factors detrimental to Dowthitt.  We have held that the "failure to present . . . evidence would not constitute 'deficient' performance within the meaning of Strickland if . . . [counsel] could have concluded, for tactical reasons, that attempting to present such evidence would be unwise."  Williams v. Cain, 125 F.3d 269, 278 (5th Cir. 1997); cf. (Terry) Williams, 120 S. Ct. at 1497-98 (finding that counsel's tactical decision to focus on defendant's voluntary confession, without undertaking any sort of investigation into defendant's background, was not justifiable trial strategy).

Thus, Dowthitt has not made a substantial showing that the actions of his trial counsel were objectively unreasonable.  As he fails to demonstrate sufficient evidence to meet the deficient performance prong of the Strickland test, he has not shown that the issue is debatable among reasonable jurists.  We therefore

deny Dowthitt's request for a COA based on this ineffective assistance of counsel claim.

### 4. *Failure to Investigate for the Guilt/Innocence Phase and the Punishment Phase*

Dowthitt argues that trial counsel did not adequately conduct their own investigation. In this regard, he makes the following contentions: trial counsel did not interview any significant State witnesses, "deferring" instead to the State's version of the events without performing independent analysis; they did not discover that Darla Dowthitt's own trial had been repeatedly reset and did not inform the jury about her pending felony case for indecency with a child; they failed to adequately impeach Delton by not presenting his prior misconduct; and they did not follow through on their own DNA testing.

The state habeas court found that, based on the credible affidavits of trial counsel, "trial counsel extensively reviewed the State's file and evidence collected in this case." Trial counsel also stated in their affidavit that they hired DNA,[22]

---

[22]   The State also asserts that Dowthitt has failed to present any exculpatory DNA evidence, despite court funding for further testing. Dowthitt responds that there was no residue left upon which to conduct such testing, "even at trial." We question how Dowthitt can make this statement and yet fault trial counsel for allegedly not having their own DNA tests performed.

30

fingerprinting,[23] and psychiatrist experts.  The record illustrates that these experts made findings in line with the State's evidence.  We find that trial counsel did not blindly bow to the State's evidence and attempted to dispute it.  That they were not successful in their attempts does not render their performance deficient.

The state habeas court also found that "trial counsel investigated Delton's background."  This finding is reasonable in light of the record.  Trial counsel knew about Delton's prior misconduct and actually attempted to admit evidence of this during trial.  The trial court, however, excluded them (after a hearing on the issue) as violating Texas Rule of Criminal Evidence 609(b).  Dowthitt's only response to this is that the Texas rules of evidence should be found offensive to the Constitution because they unfairly and arbitrarily prejudiced his defense.

However, the very case that Dowthitt cites for support recognizes that the fundamental fairness concept works to discredit evidentiary rules in very limited circumstances.  See Fuller v. State, 829 S.W.2d 191, 207-08 (Tex. Crim. App. 1992).

---

[23]   The state habeas court also found specifically that counsel hired a qualified fingerprint expert, who confirmed the State's findings.

31

The <u>Fuller</u> court emphasized that the Constitution does not easily undo the rules of evidence:

> Every rule of evidence works a hardship on some litigants part of the time, and it is easy to sympathize with the frustration of any party whose most promising strategy turns out to be objectionable under the law. But we are not at liberty to relieve every such disappointment with an ad hoc suspension of the Rules.

<u>Id.</u> at 207. The <u>Fuller</u> court noted that "the report Appellant sought to introduce in this case is precisely the sort of thing which the hearsay rule, in spite of its many exceptions, is still specifically designed to exclude." <u>Id.</u> at 208. Similarly, in this case, Dowthitt sought to introduce evidence that went to the heart of the rules of evidence against using prior misconduct to show conformity with the alleged conduct.[24] This is not the sort of instance that demands the use of the Constitution to disregard fundamental evidentiary rules.

We also find that trial counsel's performance was not deficient with regard to discovering Darla Dowthitt's felony indictment for indecency with a child. Trial counsel requested and received a discovery order for the criminal record of all State witnesses. Dowthitt falls far short of demonstrating deficient performance in this regard.

---

[24] We note that the State points out that trial counsel did elicit some evidence of past misconduct from Quijano and Delton.

32

Dowthitt has not made a substantial showing of ineffective assistance of counsel due to inadequate investigation.  As such, he is not entitled to a COA on this claim.

     5.   *Inadequate Closing Arguments at the Guilt/Innocence Phase and the Penalty Phase*

Dowthitt argues that trial counsel's closing arguments were inadequate because they undermined their own case by misrepresenting facts and making unjustifiable concessions.  He focuses primarily on counsel's comments regarding the DNA results.  Trial counsel stated in closing argument, in relevant part:

> The blood, all right.  There's been testimony there's
> some blood on the bottle . . . . We get down here to
> Picture 75 and 76 and we get a spot on the bottom that
> we know was blood because they scraped that spot off
> and they sent it in and the DNA people said 95 probably
> Gracie's blood.  But that's on the bottom and that's a
> little tiny bit and does that mean that the bottle sat
> down in or rolled around or came near or got on a piece
> of bloody clothing or in some other matter connected
> with the blood?  We assume that 95 percent is close
> enough that it is Gracie's blood.  It doesn't tell us
> how it got there.

State Trial Transcript, Vol. XXXIV at 1270-71 (emphasis added).
Dowthitt contends it was a plain misstatement to convey that there was a ninety-five percent probability the blood was Gracie's because the DNA test merely revealed that ninety-five percent of the population was excluded, with Gracie being among

33

the five percent possible contributors of the blood.[25]  Dowthitt further points to his expert's testimony on habeas that if the jury had been informed of the significant number of people who share that genetic profile, the jury would have more accurately assessed the evidence.

The state habeas court found that "trial counsel were zealous advocates for . . . [Dowthitt's] defense during closing argument."  Dowthitt falls far short of producing clear and convincing evidence to rebut the presumption of correctness we afford this finding under AEDPA.  While counsel's characterization of the test results were not entirely on point, the closing arguments as whole were thorough and effective.  The record demonstrates that trial counsel drove home the point that the DNA evidence did not tie Dowthitt to the crime — that the blood could have gotten on the bottle in any number of other ways.  We find without reservation that trial counsel's performance was sufficient in this regard.

Dowhtitt also argues that trial counsel was deficient during the closing arguments for the penalty phase.  Dowthitt faults trial counsel for statements that Dowthitt suffered from a "disease" that resulted in his acting in a "frenzy, like the

---

[25]   The DNA testing also revealed that Dowthitt and Delton were part of the ninety-five percent excluded as possible contributors.

34

feeding of a shark or something." Dowthitt also asserts that trial counsel "'argued' against Mr. Dowthitt being a future danger by positing that his only victims in prison would be 'effeminate men.'"

Dowthitt cannot manufacture deficient performance by selectively extracting phrases from trial counsel's closing argument and mischaracterizing them. While we would not endorse every aspect of trial counsel's statements, nevertheless, taken in full context, those statements for the most part were beneficial because they went toward demonstrating that Dowthitt's actions were not deliberate[26] and that he did not present a continuing danger.[27] Furthermore, we note we have held that counsel's acknowledgment of aspects of the case can be a proper "effort to bolster credibility with the jury." Kitchens v. Johnson, 190 F.3d 698, 704 (5th Cir. 1999). We will not second guess such strategic decisions under the teaching of Strickland.

---

[26] Pursuant to Section 37.071(b) of the Texas Code of Criminal Procedure, the jury had to answer two special issues during the punishment phase. Special Issue No. 1 dealt with deliberateness: "[w]hether the conduct of the defendant that caused the death of the deceased was committed deliberately and with reasonable expectation that the death of the deceased or another would result."

[27] Special Issue No. 2 dealt with future dangerousness: "[w]hether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society."

35

Dowthitt's assertions regarding trial counsel's closing arguments fail to demonstrate substantial doubt on his Sixth Amendment right.  As such, he is not entitled to a COA on this ineffective assistance of counsel claim.

In sum, the state habeas court found "trial counsel were relentless in the defense of their client in the face of a very bad set of facts."  In addition, the court found that Dowthitt failed "to show that the outcome of his trial would have been different but for the alleged instances of ineffective assistance of counsel."  Dowthitt has not presented clear and convincing evidence to rebut the presumption of correctness we afford to state court findings under AEDPA.  Furthermore, our review also reveals that the state court was not unreasonable in its finding in light of the record.  We therefore find that Dowthitt has not demonstrated a substantial showing of the denial of his constitutional right to counsel, and we deny his application for a COA on this claim.

## C.  Admission of DNA Evidence Without a Factual Predicate

Dowthitt argues that he was denied due process of law under the Fourteenth Amendment when DNA evidence[28] was admitted at

---

[28]   During the trial's guilt/innocence phase, the State presented expert testimony regarding DNA testing performed on "blood scrapings" taken from a beer bottle discovered in

36

trial without a proper factual predicate.  Pointing to the lack of a prior hearing to determine the admissibility of the DNA evidence, Dowthitt asserts that his constitutional rights were violated.  The state habeas court found that Dowthitt "failed to object to the trial court's failure to hold a hearing on the reliability of the DNA evidence and waived any error."

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

Coleman v. Thompson, 501 U.S. 722, 750 (1991).  The state procedural rule at issue in this instance is adequate because it has been "strictly or regularly followed."  Amos v. Scott, 61 F.3d 333, 339 (5th Cir. 1995).  "This Circuit has held that the Texas contemporaneous objection rule is strictly or regularly applied evenhandedly to the vast majority of similar claims, and is therefore an adequate procedural bar."  Corwin v. Johnson, 150 F.3d 467, 473 (5th Cir. 1998).

─────────────────

Dowthitt's auto shop.  The expert testified that DQ alpha typing was done on the sample due to its small size.  The State's evidence indicated that although "typing" was far less determinative than DNA "fingerprinting," it permitted a conclusion that Gracie was within the five percent of the population not excluded as contributors of the blood.

37

As for the cause-and-prejudice exception, cause is
demonstrated by establishing that some objective external factor
"'impeded counsel's efforts to comply with the State's procedural
rule.'" Meanes v. Johnson, 138 F.3d 1007, 1011 (5th Cir. 1999)
(quoting Coleman). Dowthitt maintains that cause existed for his
default. The failure to object he contends, is the result of
trial counsel's ineffectiveness. "[C]ounsel's ineffectiveness
will constitute cause only if it is an independent constitutional
violation." Coleman, 501 U.S. at 755; see also Ellis v. Lynaugh,
883 F.2d 363, 367 (5th Cir. 1989) (citing Murray v. Carrier, 477
U.S. 478, 488 (1986)). Dowthitt puts forth two arguments to
establish that counsel's ineffective assistance was of
constitutional dimension: (1) counsel's failure to request the
hearing and (2) counsel's concession that the blood from the
bottle was conclusively Gracie's.

First, Dowthitt does not provide further detail (beyond his
assertion) as to why the failure to object rose to the level of a
Sixth Amendment violation. Because this issue is inadequately
briefed, we do not consider it on appeal. See Trevino, 168 F.3d
at 181 n.3. Furthermore, we have previously held that a mere
allegation "that . . . [trial counsel] provided ineffective
assistance of counsel in failing to so object[]" is not
sufficient to establish constitutionally prohibited conduct.

38

<u>Washington v. Estelle</u>, 648 F.2d 276, 278 (5th Cir. 1981) (stating that it is "not for federal courts to speculate as to possibly [sic] reasons for failure to object." (internal quotations and citation omitted)).  Dowthitt's second argument for cause also fails because we found in section II.B.5 that trial counsel's statements regarding DNA evidence did not rise to the level of constitutional error.

Dowthitt also cannot rely on the "fundamental miscarriage of justice" exception to the procedural bar because he did not demonstrate substantial doubt as to his actual innocence.  <u>See</u> section II.A, <u>supra</u>; <u>see also</u> <u>Fearance v. Scott</u>, 56 F.3d 633, 637 (5th Cir.), <u>cert. denied</u>, 515 U.S. 1153 (1995) (rejecting the defendant's attempt to expand the "narrow scope" of the fundamental miscarriage of justice exception).

Thus, we find that Dowthitt's claim regarding the admission of DNA evidence is procedurally barred from federal habeas review.[29]  We deny Dowthitt's request for a COA on this claim because he does not demonstrate that reasonable jurists would find it debatable that the procedural ruling was correct.[30]

---

[29]  We also note that the state habeas court found, "[i]n the alternative, the State proved the reliability of the DNA evidence during the trial and there was no due process violation."

[30]  As we find that the first prong of the <u>Slack</u> COA inquiry for procedural claims has not been met, we do not need to address

### D.   State Misconduct

Dowthitt argues that state misconduct violated his right to due process and a fair trial.  In this regard, he makes the following claims: intimidation of potential defense witness David Tipps, breach in the chain of custody of the blood sample, misrepresentation of the DNA evidence to the jury, failure to disclose a felony indictment of a State witness Darla Dowthitt, and mischaracterization of Dowthitt's interrogation statement that he "was there the whole time."  We will address each of these arguments in turn.[31]

### 1. *Intimidation of Potential Defense Witness*

Dowthitt first asserts that David Tipps, Delton's jailmate, would have testified that Delton claimed he killed both girls;

---

the second prong.

[31] As an initial matter, we note that the state habeas court found Dowthitt did not adequately brief his state misconduct claims and thus did not properly present them for review.  This indicates a lack of exhaustion on Dowthitt's part because he did not "fairly apprise the . . . state of the federal rights which were allegedly violated."  <u>Deters v. Collins</u>, 985 F.2d 789, 795 (5th Cir. 1993).  However, as the state habeas court did not explicitly find that Dowthitt waived his misconduct claims and went on to make findings regarding those claims, we find that the state court had a "fair opportunity to pass upon the claim[s]."  <u>Mercadel v. Cain</u>, 179 F.3d 271, 275 (5th Cir. 1999) (internal quotatios and citation omitted).

however, after a visit from two State investigators, Tipps refused to testify. Dowthitt submits the affidavit of Joseph Ward, his state habeas investigator, in support of the claim that the State agents intimidated Tipps into not testifying. Ward states in his affidavit that Tipps would not sign an affidavit out of fear for himself.

We must first decide whether this claim was "adjudicated on the merits in State court proceedings." 28 U.S.C. § 2254(d). The state trial court held a hearing outside the presence of the jury on this issue, and Dowthitt contested the trial court's ruling on direct appeal. See Dowthitt v. State, 931 S.W.2d 244, 267 (Tex. Crim. App. 1996). However, Dowthitt did not raise this issue in his state habeas proceeding, but did do so in his brief to the federal district habeas court.

"When faced with a silent or ambiguous state habeas decision, the federal court should 'look through' to the last clear state decision on the matter." Jackson v. Johnson, 194 F.3d 641, 651 (5th Cir. 1999). Although the state habeas decision is silent on this particular misconduct claim, the Texas Court of Criminal Appeals, on direct appeal, unambiguously dealt with the issue. "Having determined that the issue was adjudicated on the merits in state courts, we owe deference to

their disposition of the claim under § 2554." <u>Barrientes</u>, 221 F.3d at 780.

The Court of Criminal Appeals determined that Tipps's fears of being a "snitch," rather than a fear of prosecution, motivated his decision not to testify in Dowthitt's defense.  It based this holding, in part, on Tipps's continued defiance even in the face of the trial court holding him in contempt.  We conclude that reasonable jurists could not debate whether the decision of the Court of Criminal Appeals was "contrary to, or involved an unreasonable application of, clearly established . . . [Supreme Court] law."  28 U.S.C. § 2254(d)(1).  As such, reasonable jurists could not "debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner."  <u>Slack v. McDaniel</u>, 120 S. Ct. 1595, 1603-04 (2000).  We find that Dowthitt is not entitled to a COA on this state misconduct claim.

### 2. Breach in the Chain of Custody of the Blood Sample

Dowthitt claims that the blood from which the DNA was extracted originally came from a knife, and not a beer bottle, as presented at trial.  In support, he offers the photograph of an evidence label that has the typewritten words "scrapings from lock blade knife" crossed out and replaced with the handwritten words "from bottle."  Dowthitt argues that the State thus

42

presented false testimony, violating his Fourteenth Amendment rights.

The state habeas court made several findings in this regard, including: "no blood scrapings other than those from a beer bottle recovered from [Dowthitt's] shop were submitted for testing[]"; "'scrapings from lock blade knife' [on evidence label] was in error[]"; "only scrapings from a bottle, and not a knife, were submitted for DNA testing."

These findings are not unreasonable "in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Given the high deference we accord to state court determinations, we find that reasonable jurists would not debate whether it should be have been resolved in a different manner, and as such, we deny to issue a COA on this claim.

### 3. *Misrepresentation of DNA Evidence to the Jury*

Dowthitt argues that the State misrepresented the conclusiveness of the DNA evidence to the jury during closing arguments. He contests the following statement: "You know it is Gracie's blood on that beer bottle."

First, we need to consider if this claim was adjudicated on the merits during state proceedings for § 2254(d) deference purposes. Dowthitt failed to object to this statement during trial and did not raise it on direct appeal. He did argue the

43

issue during state habeas proceedings, but the state habeas court
made no findings in this regard.  Therefore, we must examine the
following factors to determine whether an adjudication was on the
merits occurred:

> (1) what the state courts have done in similar cases;
> (2) whether the history of the case suggests that the
> state court was aware of any ground for not
> adjudicating the case on the merits; and (3) whether
> the state courts' opinions suggest reliance upon
> procedural grounds rather than a determination on the
> merits.

Green v. Johnson, 116 F.3d 1115, 1121 (5th Cir. 1997).

As for the first factor, Texas courts have consistently held
that unless the prosecutor's comments were "clearly calculated to
inflame the minds of the jurors and is of such character as to
suggest the impossibility of withdrawing the impression
produced," the failure to object timely waives any error.  Van
Zandt v. State, 932 S.W.2d 88, 93 n.1 (Tex. App. — El Paso 1996,
pet. ref'd).  We find that the prosecutor's argument in this case
does not fall within the exception to the failure to make a
contemporaneous objection.  As Dowthitt did not object at trial,
the first factor points toward an adjudication on the merits.

Similarly, the history of the case also favors adjudication
on the merits.  Rather than arguing the contemporaneous objection
rule, the State addressed this claim on the merits the first time
it was raised, in federal habeas proceedings.  As for the third

44

factor, we have previously held that under Texas law, "a denial of relief by the Court of Criminal Appeals serves as a denial of relief on the merits." Miller v. Johnson, 200 F.3d 274, 281 (5th Cir. 2000). Thus, the state court's denial of habeas relief does not indicate a procedural adjudication.

We find that an "adjudication on the merits" under § 2254(d) occurred with regard to this state misconduct claim. Therefore, we conduct a deferential review, as mandated by AEDPA. We next proceed to analyze whether Dowthitt made a substantial showing of the denial of his due process and fair trial rights.

In habeas corpus proceedings, we review allegedly improper prosecutorial statements under a strict standard. "The statements must render the trial fundamentally unfair." Barrientes, 221 F.3d at 753. "[I]t is not enough that the prosecutors' remarks were undesirable or even universally condemned. The relevant question is whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 477 U.S. 168, 181 (1986) (internal quotations and citations omitted).

We have held that "[i]n the context of closing argument, . . . [the prosecutor is not] prohibited from reciting to the jury those inferences and conclusions she wishes the jury to draw

45

from the evidence so long as those inferences are grounded upon evidence." <u>United States v. Munoz</u>, 150 F.3d 401, 414-15 (5th Cir. 1998), <u>cert. denied</u>, 525 U.S. 1112 (1999) (internal quotations omitted).  In this case, the prosecutor's statement is a reasonable one, requesting the jury to draw a desired conclusion based upon the evidence.[32]

As such, we find that the state court denial of Dowthitt's claims reasonable under the standards set forth by § 2254(d). Dowthitt does not demonstrate a substantial showing of the denial of his due process rights and, therefore, is not entitled to a COA in this regard.

4. *Failure to Disclose Felony Indictment of State Witness*

Dowthitt argues that the State failed to disclose that Darla Dowthitt, Dowthitt's daughter, was under felony indictment (indecency with a child) when she testified for the prosecution at the guilt/innocence phase of the trial.  Pointing to the fact that Darla's own trial date was reset several times, Dowthitt claims that an oral agreement had been struck between the State and Darla.  Thus, the nondisclosure violated the Supreme Court's mandate in <u>Brady v. Maryland</u>, 373 U.S. 83 (1963).  The State

---

[32]   The State presented the DNA results and the testimony of experts explaining those results during trial.

responds that no deal was struck for Darla's testimony, and as such, Dowthitt has no viable <u>Brady</u> claim.

The suppression of evidence material to guilt or punishment violates a defendant's fundamental due process rights. <u>See id.</u> at 87. The Court has "since held that the duty to disclose such evidence is applicable even though there has been no request by the accused, and that the duty encompasses impeachment evidence as well as exculpatory evidence." <u>Strickler v. Greene</u>, 527 U.S. 263, 280 (1999) (citations omitted). Such evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." <u>Kyles v. Whitley</u>, 514 U.S. 419, 433 (1995) (internal quotations and citations omitted).

"To prevail on a <u>Brady</u> claim, the defendant must [thus] demonstrate that (1) the prosecution suppressed evidence; (2) the evidence was favorable to him; and (3) the evidence was 'material either to guilt or punishment.'" <u>Vega v. Johnson</u>, 149 F.3d 354, 363 (5th Cir. 1998), <u>cert. denied.</u>, 525 U.S. 1119 (1999). In this case, there is no dispute that the indictment existed and the prosecution did not reveal it to the defense. This evidence arguably would have been favorable to Dowthitt's case.

While the first two prongs of the test have been satisfied here, Dowthitt fails on the third prong — materiality. "The

existence of an indictment, as opposed to a conviction, is not generally admissible to impeach." Id. (citing as example Michelson v. United States, 335 U.S. 469, 482 (1948)).  "Under Texas law, the existence of the indictment becomes admissible only if the witness, on direct examination, misrepresents himself as having no trouble with the law . . . . The only other exception, for witnesses whose testimony might be affected by the indictment . . . [is a] relationship between [the] prosecution and [the witness's] case." Id. (internal quotations and citation omitted).

First, Darla made no such misrepresentations, and thus the first exception would not have applied.  Dowthitt also cannot rely on the second exception.  The state habeas court found that the "prosecutors did not offer Darla a deal for her testimony and did not reset her case to avoid a felony conviction for impeachment purposes."  We presume this finding to be correct under § 2254(e)(1).  Dowthitt has not clearly and convincingly refuted the evidence in the record supporting the state court's determination that no suppression of evidence occurred because no deal even existed.[33]

_____

[33] Testifying at the punishment phase, Darla unequivocally stated that no deal existed, that she did not believe a deal existed, and that she would not make a deal because she was "not guilty."  The prosecutor filed an affidavit during state habeas proceedings also affirming that no deal was made with Darla to

48

We find that Dowthitt fails to demonstrate the requisite "reasonable probability" that the outcome would have been different. Thus, he does not make a substantial showing of the denial of a constitutional right and is not entitled to a COA on this claim.

5. *Mischaracterization of Dowthitt's Interrogation Statement*

Detective Hidalgo testified during the guilt/innocence phase that Dowthitt stated during the interrogation, "I was there the whole time."[34] Dowthitt asserts that this statement was misrepresented as a admission of being present at the scene. He claims that the video of the interrogation demonstrates that Dowthitt was actually indicating disbelief by repeating the statement.

As we have done in Part II.D.2 and II.D.3, supra, we must first determine whether an adjudication on the merits occurred in

---

procure her testimony. In response, Dowthitt states that Darla eventually received a lenient sentence for a plea and early release from probation. This information, by itself, is not sufficient to overcome the above evidence to the contrary (as any number of factors could have accounted for the eventual disposition of her case).

[34] The interrogation went, in relevant part, as follows:
Mr. Dowthitt:   Man, I didn't do nothing.
Hidalgo:   But you were there, not soon after it happened, weren't you? You weren't far away.
Hendricks:   He was there the whole time.
Hidalgo:   And you know what's bothering you?
Mr. Dowthitt:   I was there the whole time.

state courts. With no statement from the habeas court directly on point, we are directed to look through to the last clear state decision on the issue. See <u>Jackson v. Johnson</u>, 194 F.3d 641, 651 (5th Cir. 1999). On direct appeal, the Texas Court of Criminal Appeals found that Dowthitt's "admission to being present during the murders occurred around 1:00 a.m." <u>Dowthitt v. State</u>, 931 S.W.2d 244, 253 (Tex. Crim. App. 1996). Thus, we find that this issue was adjudicated on the merits in state proceedings, and we examine the result with the deference demanded by AEDPA. <u>See</u> 28 U.S.C. § 2254(d).

Beyond his assertions that he did not make an admission, Dowthitt does not demonstrate that the state court's adjudication was unreasonable in light of the record.[35] Thus, reasonable jurists would not "debate whether . . . the petition should have been resolved in a different manner." <u>Slack v. McDaniel</u>, 120 S. Ct. 1595, 1603-04 (2000). Accordingly, we deny Dowthitt a COA on this claim.

### E.  Instruction on Lesser-Included Offenses

Dowthitt argues that the trial court erred in failing to instruct the jury on lesser-included offenses of murder, felony

---

[35]  Both the state court and the district court below reviewed the videotapes and disagreed with Dowthitt's characterization of the statement.

murder or aggravated sexual assault, thus violating his rights
under the Fifth, Sixth, Eighth, and Fourteenth Amendments.[36]  He
asserts that evidence existed that would support convictions on
the lesser crimes, as opposed to capital murder: the beer bottle
with Gracie's blood indicated sexual assault, but not murder; the
knife alleged to be the murder weapon was not connected to the
sexual assault; and the jury knew that Delton confessed to
killing both girls in his first confession.  The State responds
that one cannot base an argument for a lesser-included offense on
the jury disbelieving portions of the State's case.  In reply,
Dowthitt maintains, given that no relevant physical evidence
actually connected him to the murder, the jury had before it
multiple scenarios, which lead to different crimes.

    We do not agree because Dowthitt fails make a substantial
showing that his case met the requirements that would necessitate

---

[36]  We note that the state habeas court found Dowthitt "did
not object to the absence of a lesser-included instruction."
However, the court did not explicitly find that, as a matter of
law, Dowthitt waived any error (which the court did with regard
to the admission of DNA evidence).  This, combined with the fact
finding that Dowthitt was not guilty of the lesser-included
offense, indicates that the state habeas court made its decision
on the merits.  We therefore do not find a procedural bar to this
claim.  Furthermore, "[h]aving determined that the issue was
adjudicated on the merits in state courts, we owe deference to
their disposition of the claim under § 2254." Barrientes v.
Johnson, 221 F.3d 741, 780 (5th Cir. 2000).

instructions on lesser-included offenses.[37]  Contrary to
Dowthitt's assertions, "[i]t is not enough that the jury may
disbelieve crucial evidence pertaining to the greater offense.
Rather, there must be some evidence directly germane to a
lesser-included offense for the factfinder to consider before an
instruction on a lesser-included offense is warranted."  Jones v.
Johnson, 171 F.3d 270, 274 (5th Cir. 1999; see also Banda v.
State, 890 S.W.2d 42, 60 (Tex. Crim. App. 1994) ("The credibility
of the evidence and whether it conflicts with other evidence or
is controverted may not be considered in determining whether an
instruction on a lesser-included offense should be given.").

As such, Dowthitt has not presented clear and convincing
evidence to rebut the state habeas court's finding that "there
was no evidence showing that [Dowthitt] was guilty [only] of the
lesser offenses of rape and murder."  Dowthitt thus fails to
demonstrate that reasonable jurists would debate the propriety of
not granting an instruction for lesser-included offenses.  With
no substantial showing on this claim, Dowthitt does not meet the
requirement for a COA.

---

[37]  A state trial court may not, under Beck v. Alabama, 447
U.S. 625 (1980), refuse a lesser-included offense instruction "if
the jury could rationally acquit on the capital crime and convict
for the noncapital crime."  Cordova v. Lynaugh, 838 F.2d 764, 767
(5th Cir.), cert. denied, 486 U.S. 1061 (1988).

52

## F.  District Court's Evidentiary Hearing

Dowthitt asserts that the district court erred in providing only a limited evidentiary hearing on his actual innocence claim and in not holding a hearing on his other claims.  He argues that the lack of factual development below was not due to his actions or lack thereof.  Dowthitt faults particularly the state habeas court judge's actions.  He states that the judge who presided over his state district court habeas proceedings, had recused himself from trial because one of the trial counsel was his own attorney in a divorce proceeding.  The judge, however, did not recuse himself from the habeas proceedings, refused to conduct an evidentiary hearing on the habeas claims, and accepted verbatim the prosecution's proposed findings.

Section 2254(e)(2) guides our determination of whether these requested evidentiary hearings were appropriate in this case.  "If an applicant had failed to develop the factual basis of a claim in State court proceedings," the federal court may hold an evidentiary hearing if:

> (A) the claim relies on
>     (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>     (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but

53

for the constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2).

"Under the opening clause of § 2254(e)(2), a failure to develop the factual basis of a claim is not established unless there is a lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel."  (Michael) Williams v. Taylor, 120 S. Ct. 1479, 1488 (2000).  Furthermore, the (Michael) Williams Court associated the "failure to develop" standard with the cause inquiry for procedural default.  See id. at 1494.

Dowthitt argues that he exercised due diligence because he requested evidentiary hearings in state habeas proceedings, and those requests were denied.  Thus, he asserts that his failure to develop his habeas claims are excused under § 2254(e)(2).  We do not agree.  Mere requests for evidentiary hearings will not suffice; the petitioner must be diligent in pursuing the factual development of his claim.  As the state habeas court found, Dowthitt did not present affidavits from family members and did not show that they "could not be obtained absent an order for discovery or a hearing."  In response, Dowthitt now argues that his "proffers" of what would be presented at a hearing constituted due diligence.  We do not find his argument

54

persuasive.  Given that the family members were willing to testify at a hearing, Dowthitt could have easily obtained their affidavits.  A reasonable person in Dowthitt's place would have at least done as much.  Dowthitt's arguments that lack of funding prevented the development of his claims are also without merit.  Obtaining affidavits from family members is not cost prohibitive.  Thus, Dowthitt has not rebutted the state habeas finding in this regard.

We find that Dowthitt has not made a substantial showing of meeting the requirements set forth in § 2254(e)(2) that would entitle him to a federal habeas evidentiary hearing.  As such, he is not entitled to a COA on this claim.[38]

---

[38]  Even if Dowthitt had met the § 2254(e)(2) standard, he would still have to clear another hurdle to obtain a COA.  "After the [§ 2254(e)] standard is met, the district court's denial is reviewed for abuse of discretion."  Clark v. Johnson, --- F.3d ----, 2000 WL 1285270, *9 (5th Cir. 2000).  When the district court has "'sufficient facts before it to make an informed decision on the merits of [the habeas petitioner's] claim,' it does not abuse its discretion in failing to conduct an evidentiary hearing."  Barrientes, 221 F.3d at 770; see also United States v. Fishel, 747 F.2d 271, 273 (5th Cir. 1984) ("Where, as here, allegations contained in a habeas petition are either contradicted by the record or supported by conclusory factual assertions incapable of being tested in an evidentiary hearing, no hearing is required.").  Given that the district court analyzed whether Dowthitt received a "full and fair hearing" in the state courts, found that Judge Alworth's conduct was proper, and wrote a thorough opinion taking into account all credible evidence, reasonable jurists would not disagree that the district court acted well within its discretion.

## III.   CONCLUSION

For the foregoing reasons, we DENY Dowthitt's request for a COA on all of his claims and VACATE the stay of execution.

A true copy
Test

Clerk, U. S. Court of Appeals, Fifth Circuit

By _Deloah M Graham_

Deputy  10/16/00

New Orleans, Louisiana

56